246 So.2d 21

**STATE of Louisiana**

v.

**Elmo SANDOZ.**

**No. 50805.**

March 29, 1971.

Jack P. F. Gremillion, Atty. Gen., Harry H. Howard, Asst. Atty. Gen., Charles A. Riddle, Jr., Dist. Atty., John A. Boatner, Jr., Asst. Dist. Atty., for plaintiff-appellant.

Laborde & Lafargue, Edwin L. Lafargue Marksville, for defendants-appellees.

BARHAM, Justice.

The State has appealed from a ruling of the district court setting aside and annulling a judgment of forfeiture of a bail bond posted for Elmo Sandoz under an indictment for felony theft. Appellate jurisdiction of this matter is vested in this court by authority of Louisiana Constitution Article 7, Section 10(5).[1]

There is no dispute as to the factual circumstances of the case. On October 2, 1969, Elmo Sandoz was indicted by the Avoyelles Parish grand jury for the theft of $620.00. A $5000.00 bail bond was posted, with Wilton Sandoz and Beulah S. Viator as sureties. Neither Elmo Sandoz nor his sureties appeared on October 14, 1969, the day of arraignment, and upon a motion of the district attorney the court ordered defendant's bond forfeited. On October 17 a formal judgment of forfeiture was rendered, read, and signed in open court.

On November 7, Wilton Sandoz, one of the sureties, filed an affidavit asking that a warrant issue for the arrest of the de-

fendant Elmo Sandoz to answer the charge of "jumping bail", and a warrant was issued. On the same day a second affidavit by the same surety averred that the defendant had been charged with felony theft, was charged with "jumping bail", had fled the State of Louisiana, and was a fugitive from justice. This affidavit then particularized the whereabouts of the defendant at Waverly Street, Houston, Texas. The district attorney forwarded these affidavits and a copy of the indictment to the United States district attorney in Shreveport, requesting the office of the Federal Bureau of Investigation to obtain a warrant against the defendant and apprehend him. The last sentence of the letter is: "If it is necessary for you or the FBI to get in touch with Mr. Wilton J. Sandoz [the surety], his address is 944 W. Main Street, New Iberia, Louisiana."

Acting upon the affidavits and information supplied by the surety, the United States marshal apprehended the defendant in Houston and delivered him there to the

---

1. Under the earlier counterparts of Article 7, Section 10(5), we determined that jurisdiction in a bond forfeiture case was the same as in the criminal proceeding from which it arose, although the procedure was civil in nature. State v. Toups, 44 La.Ann. 896, 11 So. 524 (1892); State v. Dykes, 126 La. 139, 52 So. 245 (1910); State v. Shelton, 227 La. 27, 78 So.2d 498 (1955). Appeal of the final judgment in the district court was recognized as a right of the State as well as of the person charged with the crime and his surety. State v.

Young, 142 La. 865, 77 So. 772 (1918). We have continued to treat these matters as criminal proceedings solely to determine jurisdiction under the present wording of Article 7, Section 10(5). State v. United Bonding Ins. Co. of Indianapolis, Ind., 244 La. 716, 154 So.2d 374 (1963); State v. Kunzler, 248 La. 133, 177 So.2d 112 (1965); State v. Ledener, 253 La. 915, 221 So.2d 47 (1969). Cf. Summit Fidelity and Surety Co. v. Police Jury of Rapides Parish, 244 La. 713, 154 So.2d 373 (1963).

**303**

sheriff of Avoyelles Parish, who returned him to the parish jail. The district attorney and counsel for the sureties stipulated that if the district attorney testified, he would state that he had personally mailed the letter and affidavits, and that the information furnished by the surety's affidavits was the basis for the arrest by the United States marshal of the defendant in Houston. The defendant after being lodged in the parish jail did not post a new bail bond. He remained in jail for approximately two weeks and then escaped. At the time of the trial of this rule he was jailed in Lake Charles, Louisiana, and Avoyelles Parish had a detainer for his return to that jurisdiction upon his release in Lake Charles.

■ On April 15, 1970, within six months of the date of the judgment of forfeiture, the sureties filed a rule to show cause why that judgment forfeiting the bail bond should not be set aside. The trial court rendered judgment cancelling the bond forfeiture, and the State has appealed to this court.[2]

It is the State's contention on appeal that a surrender must be followed by trial and conviction or acquittal before a judgment of bond forfeiture can be set aside. It is the contention of the sureties that the prior law and the jurisprudence relied upon by the State have been significantly changed, and that now a timely surrender, as opposed to an appearance under other circumstances, gives a right for cancellation of a bond forfeiture without the necessity for trial and conviction or acquittal of the accused.

Prior to the adoption of the present Code of Criminal Procedure and the concurrent amendment to Title 15 of the Revised Statutes of 1950, the law pertinent to the issue under consideration was found in former R.S. 15:108 and 110. These former laws and their sources contained restrictive and now archaic provisions. A surety could make a "surrender" of an accused only *prior* to a bond forfeiture and then only for the purpose of being relieved from future responsibility. Further, the surrender had to be "in open court, or within the four walls of the prison". By amendments (Act No. 411 of 1962, Secs. 6(4) and 8, and Act No. 220 of 1964, Sec. 1) to these laws and

---

2. The sureties have filed a motion to dismiss the appeal, urging that the appeal was not timely taken in accordance with Code of Criminal Procedure Article 914, and that the State had failed to reserve and perfect a bill of exception to the ruling of the district court. There is no merit to the motion. The rule heard on April 29 was taken under advisement, and on the date on which notice of the judgment cancelling the bond forfeiture was given to the State, the appeal was taken. The appeal here being in the nature of a civil appeal, the applicable law is Code of Civil Procedure Article 2123 rather than the article of the Code of Criminal Procedure. Under either article, however, the appeal was timely. Moreover, since the forfeiture of a bail bond is in the nature of a civil proceeding and is criminal only for determining jurisdiction, there is no need for bills of exception.

the adoption of the present Code of Criminal Procedure (Arts. 338 and 339) and the present Title 15 (R.S. 15:85B), these restrictive provisions have been done away with.

R.S. 15:85, which is former R.S. 15:108 without change, reads in part:

"B. Any judgment forfeiting an appearance bond rendered under the provisions of this Section shall, at any time within six months after rendition, be set aside upon the *surrender* or the appearance and trial and conviction or acquittal of the defendant, or upon a continuance granted upon motion of the district attorney after such appearance." (Emphasis here and elsewhere supplied.)

This provision has remained stable since its inception except for changes in the length of the delay allowed after a bond forfeiture judgment, the change from the permissive to the mandatory for cancellation of the judgment when warranted, and the change which is so essential to our decision here: The introduction into that provision of "surrender" in addition to "appearance". Before the 1962 amendment the pertinent phrase read: "* * * be set aside upon the *appearance*, and trial and conviction or acquittal of the defendant * * *." It is apparent that in 1962 the Legislature intended to differentiate, for the purpose of determining when bond forfeitures could be annulled, between a "surrender" made by the accused or his surety and an "appearance" brought about

under any other circumstances. Simultaneously former R.S. 15:110 was amended by the same act to read:

"Formal surrender by the surety of the accused within the four walls of the prison of the parish or to the sheriff or his deputy, in open court, at any time prior to forfeiture *or within sixty days of judgment of forfeiture,* shall operate as a discharge or release of the surety from his responsibility and when such formal surrender is made the responsibility of the surety shall cease, *and any judgment of forfeiture shall be set aside, whether or not the accused has been brought to final trial and conviction or acquittal.* However, unless formal surrender of the accused has been made as provided in this paragraph, the appearance and answer of the accused, upon call made as provided for in the preceding Sections, shall not operate as a discharge or release of any surety from his responsibility until the final trial and conviction or acquittal of such accused."

For the first time "surrender" was defined by our law to include not only a surrender made prior to a bond forfeiture but also a surrender within the time provided after a bond forfeiture.

The Code of Criminal Procedure incorporated former R.S. 15:110 in the following articles:

"Art. 338. Surrender of defendant

"A surety may surrender the defendant or the defendant may surrender himself, to the officer charged with his detention, at

any time prior to forfeiture *or within the time allowed by law for setting aside a judgment of forfeiture of the bail bond.* Upon surrender of the defendant, the officer shall detain the defendant in his custody as upon the original commitment, *and shall acknowledge the surrender by a certificate signed by him and delivered to the surety.* Thereafter the surety shall not be responsible for the defendant."

"Art. 339. Same; exoneration of surety

*"When the defendant has been surrendered* in conformity with Article 338, *the court shall, upon presentation of the certificate of surrender,* order that the surety be exonerated from liability on his bail undertaking, and shall *order any judgment of forfeiture set aside."*

The official revision comment is that Article 338 continued the broad surrender provisions of its source but adopted a simpler method for surrender following A.L.I. Code of Criminal Procedure, §§ 92 and 93(1).

All the cases cited by the State—State v. Grice, 11 La.Ann. 605 (1856); State v. Schmidt, 13 La.Ann. 267 (1858); State v. Defesse, 18 La.Ann. 104 (1866); State v. Bordelon, 113 La. 21, 36 So. 874 (1904)— are early cases decided under the archaic and restrictive law then prevailing and are not definitive of the issue before us. State v. Johnson, 132 La. 11, 60 So. 702 (1912), cites Bordelon and resolves the formerly vacillating jurisprudence under the old law

into a conclusion that regardless of whether the accused surrendered voluntarily, or was surrendered by his surety, or otherwise appeared, a prior bond forfeiture could be set aside only if in addition to the appearance there was a trial and conviction or acquittal within the time allowed for setting aside the bond forfeiture. Johnson and Bordelon were decided under Act No. 17 of 1900, when there was no distinction between a surrender and an appearance under other circumstances. This jurisprudence has in effect been overruled by the provision of law now prevailing, and insofar as these cases conflict with this opinion, they and other cases holding similarly are overruled.

■ Our present law, R.S. 15:85B, provides for the different conditions which apply to the annulment of a judgment of bond forfeiture under two distinct situations. First, a bond forfeiture shall be set aside if the accused is "surrendered". "Surrender" is defined and its consequences are provided for under Code of Criminal Procedure Articles 338 and 339. Where the accused or his surety effectuates a timely "surrender", they are rewarded with a cancellation of a judgment of bond forfeiture. However, the second situation provided in R.S. 15:85B occurs when the accused appears in court under other circumstances. In this instance the accused and his surety are penalized to the extent that as a predicate to the annulling of the

forfeiture of the bond the accused not only must appear but must be tried and convicted or acquitted or there must be a continuance granted on motion of the district attorney.

 The Legislature has responded to present-day circumstances and to the purpose of bail bonds, which is to assure the appearance of the accused, by providing that he or his surety who cooperates to effect a surrender timely may by that very act have set aside a judgment of bond forfeiture.[3] Where this cooperation is not forthcoming and the accused's presence is brought about by other means, the law retains the requirement that a cancellation of a forfeiture cannot be had except after trial and conviction or acquittal of the accused or upon a continuance requested by the district attorney.

 We note that the certificate of surrender called for in Article 338 was not obtained in the instant case and presented to the court in compliance with Article 338. These articles have followed the A.L.I. Code of Criminal Procedure and provide a simpler means than formerly existed for obtaining the cancellation of a judgment of bond forfeiture. See A.L.I. Code of Crim. Proc. (1930) § 93. However, just as we believe the State would have the right to traverse a certificate of surrender as invalid, we believe the interested parties may resort to other means than the certificate of surrender to establish surrender in conformity with the law so as to entitle them to an annulment of the forfeiture. We are of the opinion that the uncontradicted facts set forth at the beginning of this opinion show a surrender by the sureties of the accused under the law which would entitle the sureties to a cancellation of the judgment of forfeiture.[4]

For the reasons assigned the judgment of the district court is affirmed.

SUMMERS, J., concurs in the result.

---

3. We note that the accused here escaped two weeks after his surrender. This has no effect upon the validity of the surrender or the right to an annulment of the forfeiture, for the last sentence of Article 338 states: "Thereafter the surety shall not be responsible for the defendant."

4. Under the old requirement of law for the surrender of the accused within the four walls of the prison of the parish or to the sheriff or his deputy in open court, the jurisprudence narrowly and restrictively determined when and how a surrender could be legally accomplished. The comment under our present law contemplates that "surrender" is to be made to the official to whom the accused should have been committed and is to place the defendant in the same position as if he had been committed into custody without bail. Here, where state lines have been crossed by the accused, the surety employed the best means available to him and to the law for securing the surrender of the accused to the proper officer. The surety did in fact accomplish that surrender.