# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 11-952

**STATE OF LOUISIANA**

**VERSUS**

**DAVID F. PITTMAN**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 07-CR-2461
HONORABLE GERARD B. WATTIGNY, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and Billy Howard Ezell, Judges.

**REVERSED. JUDGMENT OF
ACQUITTAL ORDERED.**

J. Phillip Haney
District Attorney – 16th Judicial District Court
300 Iberia Street - Suite 200
New Iberia, LA 70560
Telephone: (337) 369-4420
COUNSEL FOR:
      Plaintiff/Appellee - State of Louisiana

Angela B. Odinet
Assistant District Attorney – 16th Judicial District Court
307 Church Street
St. Martinville, LA 70582
Telephone: (337) 394-2220
COUNSEL FOR:
      Plaintiff/Appellee - State of Louisiana

Harry Daniels, III
Daniels & Washington
830 Main Street
Baton Rouge,, LA 70802
Telephone: (225) 346-6280
COUNSEL FOR:
      Defendant/Appellant - David F. Pittman

**David F. Pittman**
**Avoyelles Correctional Center**
**1630 Prison Road**
**Cottonport, LA 71327**
**COUNSEL FOR:**
**Defendant/Appellant - David F. Pittman**

**THIBODEAUX, Chief Judge.**

David F. Pittman was charged with possession of marijuana with intent to distribute, a violation of La.R.S. 40:966. He entered a plea of not guilty.

After a jury trial, Pittman was found guilty as charged and was sentenced to thirty years at hard labor. Then, Pittman was adjudicated a sixth offender and sentenced to forty-five years at hard labor. Pittman's Motion to Reconsider Sentence was denied. Because we find the evidence insufficient for the conviction, we reverse and order the entry of a judgment of acquittal.

I.

## ISSUE

We shall consider whether the evidence adduced at trial was sufficient to support the conviction of possession of marijuana with intent to distribute where some persons at Defendant's residence received a UPS package from Texas containing marijuana, where during the search of the residence police found marijuana hidden in the bedrooms of the residence, and where at all relevant times Defendant was working offshore.[1]

II.

## FACTS

Officer Kevin Judice received a call from a detective with the Houston Police Department. The detective informed Officer Judice that a narcotics dog alerted on a package being shipped by UPS to Jose Lopez at 1008 Peggy Street in New Iberia. Officer Judice decided to do a controlled delivery of the package. When the package arrived in Louisiana, a narcotics dog examined the package and alerted the officers that narcotics were inside the package.

---

[1] Because we reverse Pittman's conviction, we do not consider whether Pittman's sentence was excessive.

A controlled delivery of the package was made to 1008 Peggy Street on August 23, 2007. A female answered the door of the residence. The female told the agent that Lopez lived there but was not home at that time. She then took possession of the package and went back inside.

A search warrant was executed at the home approximately thirty minutes to an hour after the controlled delivery. Dianne Butler, Anastasia Fuselier, and Travon Walker were inside the residence. Pittman was not present at the residence at that time.

The UPS package delivered that day had not been opened. During the search of the residence, police found marijuana in four sealed cans in a child's bedroom. Police also found a mesh bag that contained numerous plastic bags of marijuana under a dresser in the master bedroom.

Crack cocaine and a firearm were found inside the vehicle driven by Walker. Walker was charged with possession of crack cocaine with intent to distribute and possession of a firearm while in possession of a controlled dangerous substance. Walker admitted to possession of these items.

Officer Judice testified that he did not believe police attempted to locate Jose Lopez, the person to whom the UPS package was addressed.

On September 8, 2007, an informant told police Pittman was at the residence. Police entered the residence to arrest Pittman. During the arrest, Officer Judice told his deputies to look around to make sure there was nothing in plain view. At that point, according to Officer Judice, Pittman stated: "[y]'all done [sic] got all the dope, there is no dope here."

The State presented evidence that Pittman's driver's license listed his address as 1008 Peggy Street. An act of cash sale indicated Pittman owned the residence at issue. Pittman also paid the property taxes between September 19, 2006, and August 21, 2009.

Documentation admitted into evidence showed Pittman started work at Dynamic Industries on August 14, 2007, and worked on August 17, and 20 through 24, 2007. Defense counsel introduced a "time ticket" from Dynamic Industries showing Pittman's work hours from August 22 through 24, 2007. The parties then entered into the following stipulation regarding the time tickets: "these are the tickets for work performed by Mr. Pitman on an offshore rig for those three days."

A lab report indicated the four metal cans found in a child's room contained a total of 4,642 grams of marijuana, the bags found in the master bedroom contained 827 grams of marijuana, and the UPS package contained 2,208 grams of marijuana.

III.

**STANDARD OF REVIEW**

There is sufficient evidence for conviction if the appellate court determines that "the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt." *State v. Hobley*, 98-2460, p. 33 (La. 12/15/99), 752 So.2d 771, 790, *cert. denied*, 531 U.S. 839, 121 S.Ct. 102 (2000). "This standard, now legislatively embodied in LSA-C.Cr.P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. The appellate court does not assess the credibility of witnesses or reweigh evidence." *State v. Hollier*, 09-1084, p. 3 (La.App. 3 Cir. 4/7/10), 37 So.3d 466, 470, *writ denied*, 10-1037 (La. 12/10/10), 51 So.3d 722 (quoting *State v. Brown*, 42,188, 42,189, 42,190, p. 10 (La.App. 2 Cir. 9/26/07), 966 So.2d 727, 741, *writ denied*, 07-2199 (La. 4/18/08), 978 So.2d 347) (citations omitted).

## LAW AND DISCUSSION

"In order to convict a defendant for possession of a CDS with the intent to distribute pursuant to LSA-R.S. 40:967(A), the state must prove beyond a reasonable doubt that the defendant knowingly and intentionally possessed the CDS and that he did so with the intent to distribute it." *Hollier*, 37 So.3d at 470 (quoting *Brown*, 966 So.2d at 742).

> Possession of narcotic drugs can be established by actual physical possession or by constructive possession. A person can be found to be in constructive possession of a controlled substance if the State can establish that he had dominion and control over the contraband, even in the absence of physical possession.
>
> A determination of whether there is sufficient "possession" of a drug to convict depends on the particular facts of each case. Although mere presence in an area where drugs are located or mere association with one possessing drugs does not constitute constructive possession, this court has acknowledged several factors to be considered in determining whether a defendant exercised sufficient control and dominion to establish constructive possession, including: (1) his knowledge that drugs were in the area; (2) his relationship with the person, if any, found to be in actual possession; (3) his access to the area where the drugs were found; (4) evidence of recent drug consumption; and (5) his physical proximity to drugs.

*State v. Major*, p. 6, 03-3522 (La. 12/1/04), 888 So.2d 798, 802 (citations omitted).

### (A) UPS Package

Pittman contends he did not come into contact with the marijuana delivered by agents to his address; thus, the State did not prove he constructively possessed the marijuana contained in the UPS package while in Iberia Parish. In support of his argument, Pittman cites *State v. Carter*, 07-1237 (La.App. 3 Cir. 4/9/08), 981 So.2d 734, *writ denied*, 08-1083 (La. 1/9/09), 998 So.2d 712.

In *Carter*, the defendant and several others went to Texas. In Texas City, the defendant purchased bales of marijuana. The defendant had Trevor Marshall drive the car that contained the marijuana. Marshall was stopped by police in Beaumont, Texas, and the marijuana was seized. Marshall, along with police, transported the marijuana to Opelousas and Alexandria, Louisiana. While driving from Opelousas to Alexandria, Marshall called Elbert Sherman and told him he had marijuana. Sherman and Oliver Deal eventually transferred the marijuana from Marshall's vehicle to that belonging to Deal. Based on these facts, the defendant was convicted of possession of marijuana in an amount greater than sixty pounds but less than two thousand pounds.

Quoting *United States v. Singh*, 811 F.2d 758, 761 (2nd Cir.), *cert. denied*, 483 U.S. 1021, 107 S.Ct. 3264 (1987), this court reasoned:

> [*United States v.*] *DeBerry* [487 F.2d 448 (2d Cir.1973),] teaches that in a typical "controlled delivery" case, the validity of the seizure is determined as of the time the drugs are first seized, not as of the time they are retaken. Having taken proper dominion over the drugs and kept them under close surveillance, the government is deemed to be in constructive possession of them, even though, for purposes of identification, they are delivered to another. Other Circuits are in accord. *See, e.g., United States v. Bulgier*, 618 F.2d 472, 478 (7th Cir.), *cert. denied*, 449 U.S. 843, 101 S.Ct. 125, 66 L.Ed.2d 51 (1980); *United States v. Andrews*, 618 F.2d 646, 654 (10th Cir.), *cert denied*, 449 U.S. 824, 101 S.Ct. 84, 66 L.Ed.2d 26 (1980); *United States v. Ford*, 525 F.2d 1308, 1312-13 (10th Cir.1975); *United States v. Issod*, [508 F.2d 990, 993 (7th Cir.1974), *cert. denied*, 421 U.S. 916, 95 S.Ct. 1578, 43 L.Ed.2d 783 (1975) ]; *see also United States v. Emery*, 541 F.2d 887, 890 (1st Cir.1976). This means, says the Supreme Court, that "[n]o protected privacy interest remains in contraband in a container once government officers lawfully have opened that container and identified its contents as illegal." *Illinois v. Andreas*, [463 U.S. 765, 771, 103 S.Ct. 3319, 3324, 77 L.Ed.2d 1003 (1983) ].
>
> Of course, in order for a controlled delivery to accomplish its intended purpose, there must be an

actual delivery to a defendant and sufficient exercise of dominion by him to demonstrate his participation in the unlawful importation of the narcotics in question.

*Carter*, 981 So.2d at 748.

This court found that once police seized the marijuana, police had dominion and control over it. The defendant never had contact with Marshall or the marijuana once the marijuana was transported to Louisiana; therefore, the defendant never had dominion and control over the marijuana in Rapides Parish and did not have possession of the marijuana in Rapides Parish. This court then reversed the defendant's conviction and sentence.

Here, Pittman was working on August 17, and 20 through 24, 2007. Further, the State offered no evidence that he was in contact with anyone in the residence after the package was delivered or in contact with the UPS package once it was within the Louisiana border. The UPS package was seized by police in Houston and forwarded to New Iberia. It was then delivered to Pittman's residence and subsequently seized by police. Based on this court's ruling in *Carter*, 981 So.2d 734, Pittman never actually or constructively possessed the marijuana found in the UPS package.

### (B)Drugs Found at the Residence

Pittman also contends the State did not prove he had possession of the marijuana found in the bedrooms of his residence. He asserts there were no drugs found in his possession, and the State presented no evidence that he exercised dominion and control over any drugs.

In support of his argument, Pittman cites *State v. Martin*, 29,352 (La.App. 2 Cir. 5/13/97), 694 So.2d 1209. In *Martin*, a confidential informant purchased two rocks of crack cocaine from 1121 Beverly Street in Bossier City Louisiana. America Martin lived at that residence, and her boyfriend, Jonathan

Monroe, visited frequently. Two days after the purchase, police executed a search warrant at the Beverly Street residence. When police arrived, approximately fifteen people were at the residence. Police found drugs in several places at the residence. Nevertheless, none of the drugs was found in plain view.

Police arrested Monroe at the scene. Martin was not at the residence when the warrant was executed. She was arrested at the residence three days later. Police found no drugs, drug paraphernalia, or buy money on her person or in her residence at the time of her arrest.

On appeal, Martin asserted the evidence was insufficient to support her conviction for possession of cocaine with intent to distribute. It its opinion, the second circuit reversed her conviction, stating the following:

> The only evidence presented at trial regarding America Martin established that she lived at 1121 Beverly. It is uncontroverted that Martin was not present the night of the search when fifteen other people were present at the residence. The record is devoid of any evidence tending to prove that the drugs were subject to Martin's dominion and control, or that she had knowledge of their existence. When police arrested Martin several days after the raid they found no drugs, paraphernalia or evidence of recent drug use. Police failed to tie Martin to the drugs either temporally or spatially. Although Martin had complete access to the house, none of the drugs were [sic] found in plain view or in areas of the home under which she had complete control. There was no testimony that she knew anything about the drugs or had association with the drug culture. There was also no testimony that she was the person who sold drugs to the BCPD informant.

*Id*. at 1213-14.

In *State v. Hodge*, 00-515 (La.App. 4 Cir. 1/17/01), 781 So.2d 575, *writ denied*, 01-432 (La. 1/25/02), 806 So.2d 666, the defendant was convicted of attempted possession of marijuana after police executed a search warrant at her residence and found a pound of marijuana in a clothes dryer in the backyard, marijuana in the pockets of the jacket being worn by the defendant's husband,

marijuana inside the pocket of a man's jacket in a rear room of the building, and marijuana in a carry bag owned by a white female who was on the premises.

In determining whether the defendant possessed the marijuana found by police, the fourth circuit examined the following cases:

> In *State v. Martin*, 98-1507 (La.App. 4 Cir. 4/5/00), [788] So.2d [1], 2000 WL 528072, the defendant was arrested after a police pursuit, during which he discarded two bags of cocaine. Later, police went to a residence, where the defendant's wife answered the door. She gave consent to search the residence, and police found two bags of cocaine, currency, and drug paraphernalia there. There were men's clothes in the residence, but no proof that the defendant resided there, such as mail addressed to him. For that reason, this court found the evidence insufficient to sustain the defendant-husband's conviction for possession of the cocaine found in the residence. Implicit in the finding was that the evidence would have been sufficient to convict defendant for possession of that cocaine if there had been proof he resided there.

> In *State v. Maresco*, 495 So.2d 311 (La.App. 4th Cir.1986), *writ denied*, 500 So.2d 419 (La.1987), police served a search warrant on an apartment where Lori Wermuth and her fiancé, Gary Weaver, resided. Wermuth was at work when the warrant was served, but Weaver and Steven Maresco were in the apartment. Police found seven pounds of marijuana packaged in large and small plastic bags in the kitchen and on the dining room table, and a vinyl bag inside of a closed trunk in the bedroom containing over six thousand Valium pills. A scale was also recovered, along with mail addressed to Wermuth. In affirming Wermuth's conviction for possession with intent to distribute marijuana, this Court found that even though Wermuth was not home when the warrant was executed, the marijuana was seized in her apartment, and it was a reasonable conclusion that she exercised sufficient control over the marijuana. This Court also affirmed Wermuth's conviction for attempted possession of the Valium pills, finding they had been in her constructive possession because they were found in her bedroom.

> In *State v. Hookfin*, 601 So.2d 320 (La.App. 4th Cir.1991), [*writ granted, cause remanded,* 596 So.2d 536 (La.1992) to consider facial validity of La.R.S. 14:130.1,] this court found that the mere fact that the

8

defendant resided at the location where drugs were found did not in and of itself establish constructive possession. However, the fact of residence, coupled with an undercover police officers' testimony that the defendant flushed cocaine down the toilet immediately before other officers arrived, was sufficient to establish that the defendant had dominion and control over other cocaine found in the kitchen of the residence. See also *State v. Collins*, 584 So.2d 356 (La.App. 4th Cir.1991) (being a resident of premises where drugs are found is not in and of itself sufficient to prove constructive possession).

In *State v. Allen*, 96-0138 (La.App. 4 Cir. 12/27/96), 686 So.2d 1017, police observed three brothers, Kenner, Ennis and Roosevelt Allen, at one time or another, all engage in apparent street drug sales. On one occasion Kenner reached into the trunk of a vehicle, later determined to belong to him, and retrieved small objects, which he then handed to Roosevelt. After the brothers were arrested, a search of the vehicle revealed heroin, cocaine, marijuana and syringes. Roosevelt and Ennis were tried and found guilty of possession of the cocaine found in Kenner's vehicle. On appeal, this court held that the evidence was sufficient to establish that Roosevelt and Ennis were "runners" for their brother, Kenner, and both had dominion and control--constructive possession--over the cocaine found in Kenner's vehicle.

In *State v. Booth*, 98-2065 (La.App. 4 Cir. 10/20/99), 745 So.2d 737, a confidential informant purchased drugs from a female in the doorway of an apartment. A drug-detecting canine subsequently found twenty-seven foil packages of heroin inside of a wall-mounted heater in the apartment. Five additional foil packages of heroin, along with a syringe, were also found in a large felt hat on top of a curio cabinet. Both the heater and curio cabinet were located in the living room, where the defendant, a male, was seated when police entered. The defendant lived in the apartment, and the female was his fiancée. He claimed he did not know anything about the drugs, and said his fiancée did not live there, but was staying there only that one particular night. However, a letter was found in the apartment addressed to both. This court found the evidence sufficient to establish the defendant's dominion and control over the heroin found in the apartment.

*Hodge*, 781 So.2d at 581-82.

The fourth circuit then found the evidence was insufficient to sustain the defendant's conviction for possession of marijuana found in the pockets of her husband's jacket, the jacket in the living area, or that found in the white female's bag. The court went on to find the defendant had to have known her husband was selling marijuana from the residence. The court then stated the following:

> However, it would be too speculative for any rational trier of fact to conclude that she knew of, or had dominion and control over, the marijuana inside of the unplugged dryer located in the cluttered backyard. The one-pound of marijuana found in the dryer was in a large bag, apparently in bulk form. There was no indication it had been packaged for retail sale in plastic bags such as those found in the kitchen. If the marijuana had been packaged, it might suggest that it had been brought inside of the building at some point, and would perhaps indicate that Mrs. Hodge would have known about it. As it is, if Roger Hodge was selling the marijuana, he could have recently brought this bag of marijuana onto the property and deposited it in the dryer, planning to package it later, all unbeknownst to Mrs. Hodge. This is all speculation. However, so is the conclusion that Allison Hodge had knowledge of and exercised dominion and control over the marijuana. "[T] he [sic] jury cannot be permitted to speculate if the evidence is such that reasonable jurors must have a reasonable doubt."

*Id*. at 582 (quoting *State v. Tong*, 609 So.2d 822, 825 (La.1992)).

Here, Pittman was not at the residence when police entered the residence with a search warrant and found marijuana. Thus, he was not in actual possession of the marijuana found in the bedrooms by police. Factors to be considered in determining whether Pittman exercised dominion and control sufficient to constitute constructive possession of the marijuana include his knowledge that drugs were in the area, his relationship with the person found to be in actual possession, his access to the area where the drugs were found, evidence of recent drug use, and his physical proximity to the drugs.

10

Knowledge

In its closing argument, the State maintained the marijuana found in Pittman's house was there before the UPS package was delivered to his house. Yet, the State presented no evidence regarding when the marijuana found in the bedrooms of the residence was placed there.

The only evidence the State offered to prove Pittman knew the marijuana was in the bedrooms was Officer Judice's testimony regarding Pittman's statement during his arrest that there were no drugs at the residence. Pittman's statement can be interpreted in several ways, including, but not limited to: (1) the marijuana was located in the bedrooms of the residence prior to Pittman's reporting to work offshore, and he was aware of its presence; (2) he knew someone was delivering or bringing marijuana to his residence either at his direction or that of someone else's, and it was brought to the residence and placed in the bedrooms while he was working offshore; or, (3) he had no knowledge the marijuana was in the bedrooms of his residence until after it had been seized by police, and the occupants of the residence were arrested. Thus, the State's proof of this factor is unconvincing.

Relationship with Person in Possession

No one at the residence, when the search warrant was executed, was in actual possession of the marijuana. Additionally, the State did not put on testimony or evidence proving Pittman had a relationship with Fuselier, Butler, or Walker, whether or not these individuals lived at the residence, and if they did not, how long they had been at the residence on August 23, 2007.[2]

---

[2]In its closing argument, the State asserted Fuselier was Pittman's girlfriend, but there was no testimony presented to support this claim.

Access to Area & Proximity

Pittman had access to the area where drugs were found when he was at the residence. Nevertheless, it was stipulated that Pittman was working offshore August 22 through 24, 2007, and there was no evidence presented regarding when the marijuana was placed in the bedrooms of the residence or by whom.

Recent Use

There was no testimony regarding Pittman's recent drug use.

Based on these considerations, the State failed to prove beyond a reasonable doubt that Pittman had constructive possession of the marijuana found in the bedrooms of his residence. This conclusion is supported by the rulings expressed in *Martin*, 694 So.2d 1209 and in *Hodge*, 781 So.2d 575, discussed above.

RESPONSIVE VERDICTS

> "[W]hen a court finds that the evidence was not sufficient to support a verdict for the crime charged, the discharge of the defendant is neither necessary nor proper when the evidence supports a conviction of a lesser and included offense which is a legislatively authorized responsive verdict." *State v. Wright*, 36,635, p. 12 (La.App. 2 Cir. 3/7/03), 840 So.2d 1271, 1279.

*State v. Hunter*, 09-1487, p. 25 (La.App. 3 Cir. 6/2/10), 41 So.3d 546, 562.

The responsive verdicts for possession of marijuana with intent to distribute are attempted possession of marijuana with intent to distribute, possession of marijuana, attempted possession of marijuana, and not guilty. La.Code Crim.P. art. 814(49).

Because the State cannot prove Pittman constructively possessed the marijuana found in the UPS package and in the bedrooms of his residence, the

12

State cannot prove Pittman committed any of the responsive verdicts. Therefore, Pittman's conviction and sentence are reversed.

## V.

## **CONCLUSION**

For the reasons expressed above, David F. Pittman's conviction and sentence are reversed, and the entry of a judgment of acquittal is ordered.

**REVERSED. JUDGMENT OF ACQUIT TAL ORDERED.**